UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE BELLO VALDEZ,

      Petitioner,

v.                                          Case No.  2:26-cv-1340-JES-NPM

WARDEN, FLORIDA SIDE SOUTH
DETENTION FACILITY, et al.,

      Respondents.

_____/

## OPINION AND ORDER

Petitioner Jose Bello Valdez, an immigration detainee at Florida Soft Side South Detention Facility (Alligator Alcatraz), initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents filed a response to the petition.  (Doc. 7).  Upon review of the parties' filings, the Court finds that a reply is unnecessary, and the petition must be granted.

## I.  Background

Bello Valdez, a citizen of Cuba, entered the United States on June 22, 2004.  (Doc. 7 at 2; Doc. 7-1 at 3).  He was paroled into the country the following day.  (Id.)  On September 1, 2009, an immigration judge ordered Bello Valdez removed to Cuba.  (Doc. 7-1 at 3).  On May 16, 2022, United States Immigration and Customs Enforcement (ICE) released Bello Valdez on an Order of Supervision (OSUP).  (Doc. 7 at 2).  However, ICE detained Bello Valdez on

August 8, 2025 after he was arrested for theft of merchandise. (Id.)  Bello Valdez remains in ICE custody.  (Doc. 7 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Bello Valdez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  (Doc. 1 at 1-2).  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  Id. at 701.  So, "for the sake of uniform administration in the federal

2

courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.

Here, there is no dispute that Bello Valdez has been in ICE custody for more than six months following his order of removal. Nevertheless, Respondent contends that Bello Valdez "failed to comply with the attempted removal [to Mexico]" and that "due to Bello Valdez's refusal to comply, ICE officers were unable to proceed with the removal process as scheduled." (Doc. 7 at 2).

Section 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). When addressing a Zadvydas claim, courts have applied § 1231(a)(1)(C) in different ways:

> Many courts conduct an analysis using the burden shifting framework from Zadvydas, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant

3

> likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under <u>Zadvydas</u> altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the <u>Zadvydas</u> standard.

<u>Glushchenko v. U.S. Dep't of Homeland Sec.</u>, 566 F. Supp. 3d 693, 705-06 (W.D. Tex. 2021) (footnotes omitted).

The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." <u>Akinwale</u>, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" <u>Singh</u>, 945 F.3d at 1314 (quoting <u>Pelich v. Immigr. & Naturalization Serv.</u>, 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Bello Valdez's actions implicated § 1231(a)(1)(C). Respondents' position is based

4

entirely on Deportation Officer Juan Cuevas's cryptic assertion that "[o]n or about March 9, 2026, officers with the U.S. Immigration and Customs Enforcement (ICE), Enforcement Removal Operations (ERO), attempted to execute the removal of the petitioner Jose Bello Valdez (A# 097-953-769), to Mexico via the Hidalgo, Texas Port of Entry.  Bello Valdez failed to comply." (Doc. 7-2 at 2).  Officer Cuevas does not describe the events that occurred at the border or how Bello Valdez "failed to comply."  It is unclear whether ICE transported Bello Valdez to the border and essentially asked him to voluntarily depart, whether Mexico agreed to accept Bello Valdez, whether ICE communicated with Mexico regarding Bello Valdez, or whether ICE even had an approved plan for removal to Mexico that Petitioner actually thwarted in some way.  Further, assuming that Mexico was willing to accept Bello Valdez, Officer Cuevas does not explain why ICE could not or did not thereafter seek travel documents for Bello Valdez or otherwise plan for his removal to Mexico in a different way, such as a charter flight.  Without more, the Court cannot find that Bello Valdez's actions as described in Officer Cuevas's Declaration prevented his removal.  Indeed, detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart does not constitute removal; rather, it is precisely the type of indefinite detention that Zadvydas sought to prevent.

Thus, the Court declines to find that Bello Valdez's "refusal" to be removed to Mexico reset the 180-day clock.

Respondents present no evidence showing that it has taken steps toward removing Bello Valdez to Cuba, despite having nine months to do so.  Instead, their only effort—made seven months after Bello Valdez's immigration detention—has been a trip to the United States-Mexico border in an apparent attempt to coerce Bello Valdez into "voluntarily" departing to a country of which he is not a citizen.  Respondents provide no evidence suggesting that ICE actually communicated with Mexico (or any other country) regarding Bello Valdez.  Nor has Respondent demonstrated that necessary travel documents have been sought—let alone obtained— for any country.  In short, Respondent has not articulated a specific plan for Bello Valdez's removal.

Based on the evidence, or lack thereof, the Court finds that Respondent has failed to show a significant likelihood that Bello Valdez will be removed in the reasonably foreseeable future. Therefore, he is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If Bello Valdez fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision

6

with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Bello Valdez to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.    Jose Miguel Bello Valdez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.    Respondents shall release Bello Valdez within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on May 18, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7